# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

EDMOND WILLIAMS,

Petitioner,

v.                                                          9:22-CV-142
                                                           (DNH/ATB)

CHRISTOPHER MILLER, Superintendent of
Great Meadow Correctional Facility,

Respondent.

---

THERESA M. SUOZZI, for the Petitioner
JAMES FOSTER GIBBONS, AAG, for the Respondent

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).  Williams, while incarcerated at Great Meadow Correctional Facility,[1] filed this petition pursuant to 28 U.S.C. § 2254, challenging a May 23, 2017 judgment of conviction after an Albany County Court jury found him guilty of two counts of Criminal Sale of a Controlled Substance in the 3rd Degree, two counts of Criminal Possession of a Controlled Substance in the 3rd Degree, and one count of Criminal Possession of a Controlled Substance in the 4th Degree.  (Petition ("Pet.") at 1-2) (Dkt. No. 1).  Williams was sentenced to serve a term of twelve years in state prison and eight years of post-supervision release.  (*Id.* at 2).

---

[1] Williams has since been transferred to the Auburn Correctional Facility.  (Dkt. No. 16).

In his counseled federal habeas corpus application filed on February 15, 2022, Williams raises several arguments as grounds for relief. (*See generally* Pet.). Respondent filed a response to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 13, 14). For the following reasons, this court agrees with respondent and will recommend denying the petition.

## I.    **Relevant Facts**

Respondent has included a detailed description of the facts and procedural history of this case. (Respondent's Memorandum of Law ("Resp't MOL") at 2-8) (Dkt. No. 14-1). This court will summarize the relevant facts as set forth in the state court record for clarity, and will discuss specific facts as necessary in the analysis of Williams' claims.

### A.    **Pre-Trial Proceedings**

On July 22, 2016, an Albany County grand jury indicted Williams on two counts each of Criminal Sale of a Controlled Substance in the Third Degree (Penal Law § 220.39(1)) and Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16(1)), and one count of Criminal Possession of a Controlled Substance in the Fourth Degree (Penal Law § 220.09(1)). (SR 8). On December 8, 2016, Albany County Court Judge Peter A. Lynch conducted an evidentiary hearing regarding Williams' motion to suppress evidence. (*See generally* Suppression Hearing ("Suppression Hr'g")) (Dkt. No. 13-1). During the hearing Lieutenant Gorleski and Detectives Kelley, Chromczak, Norris, and Regan testified. (*Id.*).

### B.    **The First Trial (02/07/2017-02/14/2017)**

Williams' first jury trial was held in front of Judge Lynch from February 7, 2017 through February 14, 2017. (Trial Transcript One ("T1 Tr.")) (Dkt. No. 13-2). Nine

2

witnesses testified on behalf of the government.  During the testimony of Detective Jason Kelley, the government entered into evidence a recording of a cell phone conversation between confidential informant Derek McMasters and Williams.  (T1 Tr. 35-49).  Defense counsel Neroni objected to the recording on multiple grounds, including a violation of the CPL § 710.30 notice requirement.  (*Id.*).  After finding the recording was sufficiently audible, Judge Lynch overruled the objection and admitted the recording into evidence.  (*Id.* at 47, 49).

During closing arguments, one of the jurors had a medical emergency and was transported to the Albany Medical Center Hospital.  (*Id.* at 633-34).  Due to the unavailability of jurors, the court declared a mistrial, without prejudice for a new trial. (T1 Tr. 639).

### C.     The Second Trial (03/15/2017-03/17/2017)

Williams' second jury trial was held from March 15, 2017 through March 17, 2017, again before Judge Lynch.  (Trial Transcript Two ("T2 Tr.") 280-759).  The government's witnesses consisted of Detective Jason Kelley (*Id.* at 301-30, 339-73), Detective Lieutenant Richard Gorleski (*Id.* at 373-406), Detective John Regan (*Id.* at 406-48), Detective Joseph Chromczak (*Id.* at 455-510), Detective Michael Fargione (*Id.* at 510-51), Detective William Norris (*Id.* at 551-69), confidential informant Derek McMasters (*Id.* at 570-606), retired Detective John Reilly (*Id.* at 607-23), and forensic scientist Luz Stevens (*Id.* at 628-49).

Through the witnesses' testimony and various forms of documentary evidence, the government established that the police arranged a rip operation[2] on September 28, 2015.  Detective Kelley asked confidential informant McMasters, who was being detained on a separate criminal investigation, to set up a meeting to purchase drugs. (T2 Tr. 311).  McMasters informed Detective Kelley he knew someone named "Dutch" or "Magic" who could sell him ten grams of crack cocaine and one hundred bags of heroin.  (*Id.* at 311, 574).  McMasters' only description of Dutch/Magic was an African American male driving a dark colored Charger.  (*Id.* at 311-12, 594).

Detective Kelley recorded McMasters' call setting up the meeting.  (*Id.* at 312). During the call, Dutch/Magic agreed to sell McMasters ten grams of crack cocaine and one hundred bags of heroin.  (*Id.*).  They arranged to meet in front of the Betty Boop diner to make the exchange.  (*Id.*).  When Assistant District Attorney ("ADA") Spillane offered the cell phone recording into evidence, defense counsel Della Porta objected on the same grounds that were previously raised in the first trial.  (T2 Tr. 314, 577).  Judge Lynch overruled the objection and entered the recording into evidence.  (*Id.*).

After the initial call between McMasters and Dutch/Magic, Detective Kelley briefed everyone in the community response unit and sent a surveillance team to stake out the Betty Boop diner.  (*Id.* at 315).  Once McMasters confirmed that Dutch/Magic was on his way, Detective Kelley and McMasters drove to the diner.  (*Id.* at 316-18). Detective Regan was parked at the intersection in front of the diner, where he observed

---

[2] During a rip operation, a police officer will have an informant set up a meeting with a drug dealer to purchase drugs.  (T2 Tr. at 304).  Once the meeting is set up, a surveillance team will stake out the location of the sale.  (*Id.*).  After the surveillance team is in place, the informant will call the drug dealer to confirm they are at the location.  (*Id.*).  Once the surveillance team confirms the drug dealer is in the location, a takedown team will arrest the individual.  (*Id.*).  According to Detective Kelley, an actual transaction does not occur when the police department conducts a rip operation.  (*Id.*).

4

an individual arrive in a "new-style, dark-colored, burgundy Charger." (*Id.* at 413-14). Detective Regan identified Williams as the same individual at trial. (T2 Tr. 414). Detective Regan then observed Williams get out of his car and make a phone call. (*Id.* at 416). Detective Kelley confirmed that Dutch/Magic was on the phone with McMasters. (*Id.* at 370, 416). Detective Kelley then ordered the officers to arrest Williams. (*Id.* at 417).

Detective Chromczak observed Williams walking away from the intersection and yelled, "Police, stop." (*Id.* at 461). He observed Williams toss a plastic bag towards the street. (*Id.* at 480). Detective Chromczak testified Williams did not stop, but continued walking in a zigzag fashion. (*Id.* at 461). Detective Chromczak caught up to Williams and arrested him. (*Id.* at 462). Lieutenant Gorleski searched Williams after he was arrested and handcuffed. (*Id.* at 378-79). Lieutenant Gorleski testified he recovered a "plastic baggie containing crack cocaine in his left pants pocket" and a flip phone in Williams' right pants pocket. (*Id.* at 379). He further testified he performed a field test that confirmed the substance was cocaine. (*Id.* at 381). Detective Fargione found a plastic bag, underneath a nearby vehicle, that contained one hundred bags of heroin. (T2 Tr. at 516). Detective Fargione performed a field test that confirmed the substance was heroin. (*Id.* at 518).

At the conclusion of the government's case-in-chief, defense counsel Della Porta made a motion pursuant to CPL § 290.10 for an order of dismissal, arguing that the government did not "establish legally sufficient evidence of the offenses charged in every single count of the indictment." (*Id.* at 650). Judge Lynch denied the motion, finding it was "fundamentally clear that the People have met [their] burden." (*Id.* at 651-52).

Williams did not testify on his own behalf but did call forensic scientist Amy Donahue as a witness. (*Id.* at 652-70). Judge Lynch denied Williams' renewed motion for judgment as a matter of law at the close of evidence. (*Id.* at 672-73).

### D.    Verdict and Sentencing

The jury convicted plaintiff of all charges, and a sentencing hearing was conducted on May 3, 2017. (*See generally* Dkt. No. 13-4). Judge Lynch sentenced Williams to an aggregate sentence of twelve years, followed by a period of three years of post-release supervision. (*Id.* at 21).

### E.    Direct Appeal

Williams filed a counseled brief in the Appellate Division, Third Department. (SR 1-29, 65-88). The Appellate Division affirmed the judgment of conviction on November 27, 2019. *People v. Williams*, 177 A.D.3d 1178 (3d Dep't 2019) (SR 89-97). Williams filed a counseled application for leave to appeal to the New York Court of Appeals, which was denied on February 7, 2020. *People v. Williams*, 34 N.Y.3d 1164 (2020) (SR 98-101).

### F.    Writ of Coram Nobis

Plaintiff filed a pro se Writ of Error Coram Nobis, which was denied by the Third Department Appellate Division on June 22, 2020. *People v. Williams*, No. 109492 (N.Y. App. Div. 3d Dep't June 22, 2020) (SR 103-119). Plaintiff next filed a pro se application for leave to appeal to the New York Court of Appeals, which was denied on October 20, 2020. *People v. Williams*, 34 N.Y.3d 1116 (2020) (SR 120-128).

### G.    § 440.10 Motion to Vacate

Plaintiff filed a counseled motion to vacate the judgment pursuant to NYCPL § 440.10 on May 7, 2021. (SR 129-244). In the motion, Williams first argued that he

6

was denied due process and a fair trial because a cell phone recording was admitted into evidence, even though the government allegedly violated the CPL 710.30 notice requirement. (SR 133-40). Williams also argued he received ineffective assistance of counsel on multiple grounds, including that counsel "failed to properly move to preclude" the cell phone recording because it violated CPL 710.30. (SR 140-46). Last, Williams argued that his sentence was harsh and excessive.

Judge Lynch denied Williams' § 440.10 motion in its entirety. (SR 247). With respect to the cell phone recording, Judge Lynch concluded that Williams could have, but failed to, raise this argument in his direct appeal. (*Id.*). In any event, Judge Lynch determined that the cell phone recording was not subject to the notice requirement because it was res gestae of the crime. (*Id.*). Judge Lynch further found that counsel was not ineffective with respect to the CPL 710.30 notice violation, because the cell phone recording was not subject to the notice requirement. (SR 248). He also found the other ineffective-assistance-of-counsel claims meritless, in addition to petitioner's sentencing claim. (SR 248). On December 17, 2021, the Appellate Division denied Williams' motion to appeal Judge Lynch's decision. (SR 249).

## II.   **Generally Applicable Law**

### A.   **Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")**

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies, or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

8

**B.    Exhaustion**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1).  The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994).  The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d

514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

### C.    Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*. When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted)).

10

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

## DISCUSSION

### III.   Violation of CPL § 710.30

Williams argues he was "denied his fundamental constitutional right to a fair trial and [d]ue process" because the trial court improperly admitted a cell phone recording as

evidence at his trial.  (Pet. 3-10).  Williams specifically argues the cell phone recording was subject to the notice requirement under CPL § 710.30,[3] and that the government failed to disclose the recording prior to trial, pursuant to the statute.  (*Id.*).

During the first trial, defense counsel Neroni argued the cell phone recording was inadmissible because it violated the CPL § 710.30 notice requirement.[4]  (T1 Tr. 37-46).  Judge Lynch held there was no notice violation because the cell phone recording constituted res gestae of the crime.  (T1 Tr. 48).  During the second trial, defense counsel Della Porta objected on the same grounds that were previously made during the first trial.  (T2 Tr. 314).  The trial court judge again overruled the objection and admitted the recording into evidence.  (*Id.*).  Williams argues he "was severely prejudiced and taken by unfair surprise when the trial court allowed the People to admit this recording without either proper notice, or at least an audibility hearing as portions of the recording were difficult to understand."[5]  (Pet. 3).

With respect to Williams' constitutional due process and fair trial claims relative to this issue, respondent argues these claims are procedurally barred because Williams did not present the same federal claim to state court for review.  (Resp't MOL 10).  Williams' direct appeal to the appellate division and subsequent application for leave to appeal to the New York Court of Appeals does not raise any issues regarding due

---

[3] Section 710.30 generally requires the prosecution to give notice to a defendant if the prosecution intends to offer at trial "evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion" by the defendant.

[4] Defense counsel Neroni also argued the recording was inadmissible because it constituted hearsay, lacked foundation, and violated the best evidence rule.  (T1 Tr. 35-37).

[5] As previously referenced, Judge Lynch determined that the recording was sufficiently audible during the first trial.  (T1 Tr. 47).

12

process and fair trial violations. (*See generally* SR 1-29, 65-87). Likewise, Williams'

writ of error coram nobis merely alleges that appellate counsel Kessler failed to

challenge the admissibility of the cell phone recording on the grounds that the

prosecution violated CPL § 710.30. (SR 111). Neither the writ nor the application for

leave to appeal to the New York Court of Appeals allege any fair trial or due process

violations, federal or state. (SR 111-18, 122-27). Only in his §440.10 motion to vacate

the judgment does Williams argue fair trial and due process violations. Specifically,

Williams alleges that his rights to a fair trial and due process were infringed upon by a

violation of a New York State evidentiary rule. (SR 133). During this argument,

Williams cites extensively to state case law and state regulations. (SR 133-140). He

also cites to the footnote of one Supreme Court case, for the proposition that statements

can be suppressed if they violate a defendant's right against self-incrimination, but does

not cite to any federal authority concerning the right to a fair trial or due process. (SR

137).

Williams' limited reference to the general concepts of due process and fair trial in

his § 440.10 motion do not sufficiently present a federal claim to the state courts for

purposes of federal habeas exhaustion. *Ildefonso v. Wendland*, No. 9:18-CV-1159

(DNH/ATB), 2019 WL 7484053, at *8 (N.D.N.Y. Oct. 31, 2019), *report and

recommendation adopted*, 2020 WL 58674 (N.D.N.Y. Jan. 6, 2020) (citing *Lewis v.

Griffin*, 2015 WL 6692220, at *12) ("Although some of the New York cases primarily

relied on by petitioner reference *Strickland* and the federal constitution, petitioner did

not cite these cases to invoke any federal analysis of his own claims, nor do the cases

themselves invoke a constitutional analysis of factually similar claims."); *Petrucelli v.

Coombe*, 735 F.2d 684, 688 (2d Cir. 1984) (holding that petitioner's appellate argument

that the introduction of certain evidence "deprived him of fair trial [sic] and due process of law" was insufficient to "put the state courts on notice" of his federal constitutional claim). Specifically, Williams' single quoted reference to the "rights as the [d]efendant may derive from the Constitution of his state or the United States" does not rise to the level of exhaustion for petitioner's fair trial and due process claims. *See Golson v. Griffin*, No. 1:13-CV-00092, 2017 WL 1176049, at *3 (W.D.N.Y. Mar. 30, 2017) (holding petitioner's federal claims were unexhausted where the petitioner's direct appeal asserted "he was denied his right to due process of law and a fair trial under both the state and federal constitution" but did not cite any federal cases or state cases employing constitutional analysis). Because petitioner cannot return to state court to raise this issue, it is "deemed" exhausted but barred by procedural default.

A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999). Petitioner has not alleged cause or prejudice, and he has not established actual innocence. Thus, his claim based on the alleged § 710.30 violation is procedurally defaulted and barred from federal habeas review.

14

Even if Williams' claim was not procedurally defaulted, defective CPL § 710.30 notice does not present a constitutional issue subject to federal habeas corpus review. *See, e.g.*, *Brown v. Harris*, 666 F.2d 782, 785 (2d Cir. 1981) ("Next, appellant claims that it was reversible error to admit the identification testimony without giving him advance notice [under § 710.30] . . . .  Brown cites no case indicating that this statute, or that a notice requirement in general, is constitutionally mandated."); *Scrubb v. LaValley*, No. 10-CV-3286, 2015 WL 4251238 at *3 (E.D.N.Y. July 13, 2015) ("[C]ourts have routinely concluded that a '[v]iolation of the notice requirement of New York Criminal Procedure Law § 710.30 is purely a matter of state law and raises no constitutional issues for a habeas court to review.'"); *Dotson v. Ercole*, No. 06 Civ. 7823, 2009 WL 1615997 at *2 (S.D.N.Y. June 9, 2009) ("Even if the admission of the testimony at issue did contravene CPL § 710.30(1), such an admission does not constitute a constitutional violation. The Constitution does not guarantee a right to advance notice of identification testimony."); *Roberts v. Scully*, 875 F. Supp. 182, 191 (S.D.N.Y. 1995) (violation of § 710.30 does not "reflect a claim of constitutional magnitude"), *aff'd*, 71 F.3d 406 (2d Cir. 1995).  Accordingly, Williams would not be entitled to habeas relief based on this purported state law violation.

Finally, even if the claim was not barred by procedural default, and was cognizable on habeas review, Judge Lynch reasonably concluded that the cell phone recording was not subject to the notice requirement, because it was res gestae of the crime.  (SR 247).  "[T]he law is well settled that res gestae statements, i.e. declarations accompanying and elucidating the criminal transaction, are not subject to the notice requirement."  *People v. Fox*, 178 Misc. 2d 1018, 1026 (Sup. Ct. 1998).  Here, the recording consisted of confidential informant McMasters setting up a meeting to

15

purchase drugs from Williams.  (T2 Tr. 573-74).  In the recording, McMasters ordered ten grams of crack and ten bundles of heroin from Williams.  (*Id.* at 574).  Therefore, these statements were res gestae of the crime.  "When there is no question as to the voluntariness of a defendant's statements to a public servant, as in the case of res gestae statements, notice to the defendant of the intention to offer such statements into evidence is not required."  *People v. Wells*, 133 A.D.2d 385, 385 (2d Dep't 1987).  For all of the above reasons, Williams' request for habeas relief on this basis should be denied .

## IV.  Ineffective Assistance of Counsel

The relevant federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland*.  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment."  *Hudson v. New York*, No. 07-CV-1327, 2007 WL 3231970, at *2-3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington*, 466 U.S. at 687).  Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland v. Washington*, 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692-93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

> Upon review of a habeas petition claiming ineffective assistance of counsel,
>
> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]

*Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance*, 556 U.S. 111 (2009)). Here, Williams raises multiple ineffective assistance of counsel claims. (Pet. 10-18). The court will address each argument in turn.

### A.    Failure to Suppress Cell Phone Recording

As previously discussed, Detective Kelly recorded confidential informant McMasters setting up a drug deal with a person he refers to as Dutch/Magic.  In his § 440.10 motion to vacate the judgment, Williams argued that his trial counsel "failed to properly move to preclude the recorded statements[.]"  (SR 140).  In his decision on the § 440.10 motion, Judge Lynch determined that trial counsel was not ineffective for the purported CPL § 710.30 violation, because the cell phone recording was res gestae of the crime and thus not subject to the statutory notice requirement.  (SR 248-49).  The Appellate Division denied Williams' application to appeal this judgment.  (SR 249).

With respect to the first *Strickland* prong, a review of the record shows that trial counsel's conduct never fell below an objective standard of reasonableness.  It is clear from the record that Williams' defense attorneys sought to preclude the cell phone recording.  At the first trial, defense counsel Neroni objected to the admission of the cell phone recording on multiple grounds, including that it violated CPL § 710.30.  (T1 Tr. 35-49).  Even Williams admitted that his attorney "objected whole-heartedly" to the evidence.  (SR 112).  Defense counsel Della Porta also objected, on these same grounds, during the second trial.  (T2 Tr. 314, 577).  Williams has not otherwise established how counsel could have provided more effective assistance in their meritless endeavor to preclude this evidence under CPL § 710.30.  *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

"[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.  Because Williams has not established

18

professionally unreasonable performance, his ineffective assistance of counsel claim on this ground must fail.

### B.    Failure to Seek Suppression of Physical Evidence

When Williams was searched by law enforcement, Detective Gorleski recovered a "plastic baggie containing crack cocaine" and a flip phone.  (T2 Tr. at 379).  Detective Fargione also recovered a bag of heroin that Williams allegedly threw under a car.  (*Id.* at 516).  Williams argues, as he did in his § 440.10 motion, that defense counsel Neroni failed to "effectively move to suppress the evidence that was illegally obtained without sufficient probable cause."  (Pet. 10).  The trial court rejected this argument, finding the claim was meritless.  (SR 248).

With respect to the bag of heroin that was found under the car, Williams has no standing to challenge the recovery as a violation of his Fourth Amendment rights.  "It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property."  *United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st Cir. 2003).  Thus, defense counsel did not err by failing to move to suppress the bag of heroin.  *Lewis v. Bennett*, 328 F. Supp. 2d 396, 408 (W.D.N.Y. 2004) ("Defense counsel cannot be found inadequate based on the failure to advance a legally baseless argument.").

With respect to the cell phone and bag of crack cocaine, the officers retrieved these items from Williams after a search incident to a lawful arrest.  The officers had probable cause to arrest Williams because he "arrived at the pre-described and agreed-upon location, in the car that the informant had described, at the time expected, and his arrival was followed by a call to the informant to inquire as to the informant's whereabouts."  *United States v. Vanhoesen*, 552 F. Supp. 2d 335, 340 (N.D.N.Y. 2008).

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Laaman v. United States*, 973 F.2d 107, 113 (2d Cir. 1992) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  Williams cannot show that a motion to suppress the evidence based on lack of probable cause would have been meritorious.  Thus, defense counsel was not ineffective for not raising this argument.

### C.    Failure to Raise "Chain-of-Custody" Issue

Williams argues defense counsel's failure "to challenge the admission of the cell phone led to her subsequent failure to raise a meritorious defense and greatly prejudiced him at trial." (Pet. 15).  He specifically argues that defense counsel "should have fought harder to have the evidence suppressed by submitting documentary evidence." (Pet. 15).  In his affidavit,[6] Williams alleges that the cell phone presented at trial is not the same cell phone that was taken from him during his arrest.  (SR 158).  Williams alleges the cell phone presented at trial must be different because the cell phone was not entered into evidence and was transported to the jail with him as personal property.  (SR 158).  He also alleges the cell phone must be different because it has a different incident number than all of the other booking paperwork.  (*Id.*).

To the extent Williams is claiming that his counsel should have raised the above issue at trial, the concept of "chain of custody" goes only to the weight, not to the admissibility of the evidence.  *McCalla v. Greiner*, 378 F. Supp. 2d 262, 272

---

[6] In the petition, Williams refers to exhibits and an affidavit as the "documentary evidence." (Pet. 15-16).  As Williams uses the same brief for his motion to vacate his judgment, the court assumes he is referring to the documents he attached to that motion.

(W.D.N.Y. 2005). Thus, even if counsel had argued this issue, it would not have led to the suppression of the cell phone as evidence. Moreover, Detective Gorleski testified that he secured the cell phone at the crime scene and then turned it over to Detective Norris. (T2 Tr. 382, 553). Detective Norris testified that he placed the cell phone into an evidence bag and then put it into the evidence room. (*Id.* at 554-55). He also testified that the cell phone presented at the trial is the same cell phone from the night of the arrest. (*Id.* at 555). As Williams has not established that his underlying suppression claim was "meritorious," or that there was "a reasonable probability that the verdict would have been different absent the excludable evidence[,]" he has failed to establish his entitlement to habeas relief on this basis. *Parisi v. Artus*, No. 08-CV-1785, 2010 WL 4961746, at \*6 (E.D.N.Y. Dec. 1, 2010) (quoting *Maldonado v. Burge*, 697 F. Supp. 2d 516, 525 (S.D.N.Y. 2010)) (additional citations omitted).

### D. Failure to Raise Discrepancies in Evidence of Drug Possession

Williams argues defense counsel "failed to properly raise the issue of [Williams'] alleged possession of crack cocaine of 7.392 grams" during the suppression hearing. (Pet. 16-17). During the suppression hearing, defense counsel Neroni moved to suppress evidence of the narcotics seized from Williams. (Suppression Hr'g 3). However, Williams argues that defense counsel should have specifically addressed the discrepancy in Detective Kelley's testimony – that Williams possessed powder cocaine, despite the fact he was ultimately charged with possession of crack cocaine. (Pet. 16).

Williams' argument is meritless, because Detective Kelley did not testify that Williams possessed powder cocaine until the trial. (Suppression Hr'g 88-109). Thus, it would have been impossible for defense counsel Neroni to note this discrepancy at the

21

suppression hearing.  In any event, defense counsel Della Porta noted this discrepancy at closing arguments at trial.  (T2 Tr. 699).

Williams also argues the cocaine was not his because the offense date on the evidence bag was July 30, 2015, whereas the arrest occurred on September 28, 2015. (Pet. 17).  Detective Reilly testified that he changed the date on the evidence bag to September 28, 2015 when he was informed of the discrepancy.  (T2 Tr. 619-20).  He further testified that he changed the date to September 28th specifically because that was the date on the lab submission sheet.  (*Id.*).

On a motion to suppress physical evidence, the government bears the burden of establishing the legality of police conduct.  *See People v. Maiwandi*, 170 A.D.3d 750, 751 (2d Dep't 2019).  "Implicit in this concept is that the testimony offered by the People in first presenting their case must be credible."  *People v. Nelson*, 199 A.D.3d 708, 709 (2d Dep't 2021) (internal quotation marks omitted).  However, "[n]ot every conflict between information contained in police paperwork and an officer's hearing testimony will cast significant doubt on the officer's credibility."  *People v. Austin*, 203 A.D.3d 732 (2d Dep't 2022).  Here, Williams has not shown that "attacking" the paperwork discrepancy would have resulted in suppression.  In addition to Detective Reilly's explanation for the discrepancy, Lieutenant Gorleski also testified at the suppression hearing that he recovered the cocaine from Williams on the date in question.  (Suppression Hr'g 38).  Thus, Williams has not shown this would have been a meritorious argument.  "Having failed to make this showing, petitioner cannot demonstrate that trial counsel's performance in filing a suppression motion was so deficient as to violate his Sixth Amendment right to counsel."  *McDowell v. Heath*, No. 09 Civ. 7887, 2013 WL 2896992, at *35 (S.D.N.Y. June 13, 2013).

### E.    Failure to call ShiMeika Gibson at the Suppression Hearing

Williams alleges defense counsel Neroni "failed to attack the huge discrepancies in the case regarding where the[ ] narcotics really came from." (Pet. 17). He specifically alleges that Williams' niece, ShiMeika Gibson, could have testified at the suppression hearing. (Pet. 17). Although defense counsel Neroni did not call Gibson to testify at the suppression hearing, she did call her to testify during the first trial. (T1 Tr. at 574-85). Gibson testified that she called Williams to come pick her up from the same street where the Betty Boop diner was located. (*Id.* at 575-76). She further testified that she observed the officers searching Williams and did not see them remove anything from him. (T1 Tr. 579-80). Defense counsel Della Porta did not call Gibson to testify during the second trial. (T2 Tr. 652-72). During sentencing, Judge Lynch stated that he found Gibson's "testimony at the first trial to be patently false." (Sentencing Hr'g 13).

"It is well settled that an attorney's decision to call or not to call a witness is not a persuasive predicate for an ineffective assistance of counsel argument." *Arce v. United States*, No. 16 CR. 643, 2021 WL 5502074, at *2 (S.D.N.Y. Nov. 23, 2021) (citing *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess."); and *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) ("The decision not to call a particular witness is typically a question of trial strategy that reviewing courts are ill-suited to second-guess.")).

Here, Williams has not established that counsel's "failure" to call Ms. Gibson as a witness was not strategic in nature. Ms. Gibson's testimony, as elicited at the first trial, was in direct contradiction with the testimony of Detective Gorleski at the suppression hearing. (Suppression Hr'g 38). Furthermore, at the second trial, Detective

Chromczak testified that there was no one on the sidewalk or the block. (T2 Tr. 461). It is undisputed that Ms. Gibson would have been several feet away from Williams when police searched him that night, as opposed to the law enforcement officers who were standing with him and actively searching him. Thus, it would not have been unreasonable strategy for counsel to refrain from calling Ms. Gibson as a witness, and have her reliability questioned on cross-examination. To be sure, Judge Lynch's subsequent statement that he found Ms. Gibson's testimony to be "patently false" would support the inference that counsel's decision was strategic, and did not evidence deficient representation. (Sentencing Hr'g 13). *See Reed v. Smith*, No. 05-CV-3969, 2006 WL 929376 at *7-8 (E.D.N.Y. Apr. 11, 2006) (trial counsel was not ineffective where witnesses' "reliability . . . was certainly questionable enough to ratify his strategy of refraining from calling them."). Accordingly, William's request for habeas relief on this basis should be denied.

### F.    Trial Defenses and Sentencing

Williams alleges that defense counsel's failure to investigate possible defenses "greatly prejudiced" his success, but Williams does not identify any potential defenses that should have been employed. (Pet. 14-15, 18). *See LaRosa v. Kirkpatrixk*, No. 15-CV-07008, 2019 WL 1458252, at *9 (E.D.N.Y. Mar. 31, 2019) (finding ineffective assistance claims insufficient where the petitioner alleged "defense counsel failed to . . . pursue unspecified defenses[.]"); *Lamberti v. United States*, No. 95 Civ. 1557, 1998 WL 118172, *2 (S.D.N.Y. Mar. 13, 1998) (rejecting Sixth Amendment claim based on failure to investigate or communicate with petitioner as "vague and conclusory. [The allegations] do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result. Such allegations cannot sustain a

24

petition for habeas corpus."); *Fardella v. United States*, No. 11-CR-872, 2014 WL 3294876, at *4 (S.D.N.Y. July 8, 2014) ("[Petitioner's] claim is too sparse and lacking in any detail or specificity to merit a full hearing or any other relief").

Williams argues defense counsel Della Porta "did not fight hard enough for him at sentencing for an alternative to such extreme incarceration, such as the Willard Program as an alternative to such an extreme amount of state prison." (Pet. 17-18). During the sentencing hearing, ADA Spillane stated that she found "it laughable that he thinks he should get Drug Court because he has a drug problem." (Sentencing Hr'g at 8). She further stated that there was "no record or history of drug use for this defendant, ever." (*Id.* at 8). "The Willard Drug Treatment Program is a drug treatment center operated by the New York State Department of Correctional Services in conjunction with the Division of Parole and licensed by the New York State Division of Alcohol and Substance Abuse Services." *Roundtree v. Bartlett*, No. 10-CV-00633, 2011 WL 5827315, at *1 n. 1 (W.D.N.Y. Nov. 18, 2011). As neither the record, nor Williams indicates that he suffers from drug abuse, the Willard program would not be an appropriate program for Williams. (*See generally* Pet.). "Counsel cannot now be deemed ineffective for failing to make an argument or objection that stood little chance of success." *Shire v. Costello*, No. 9:07-CV-285 (TJM), 2008 WL 2323379, at *12 (N.D.N.Y. June 2, 2008). Thus, defense counsel Della Porta was not ineffective for failing to make an argument for William's placement in the Willard program.

Furthermore, Williams has not identified any other programs his attorney should have advocated for or suggested any arguments that would have persuaded the court to impose a lower sentence. Therefore, this claim is too vague to state a basis for habeas relief. *Hall v. Phillips*, No. 04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25,

2007) (absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas."); *Brown v. New York*, No. 04-CV-1087, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) (vague and conclusory allegations are insufficient to state a viable claim for habeas relief); *Skeete v. New York*, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("vague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.") (emphasis in original).  Williams makes similarly conclusory and vague allegations regarding trial defenses, simply stating defense counsel failed "to properly investigate any possible defense . . . ."  (Pet. 18).  Williams does not identify what these possible defenses are and thus the allegation is insufficient to state a viable claim for habeas relief.

### G.    Failure to Investigate witnesses Jesse Rollins and Brooke Salvi

Williams alleges trial counsel erred by failing to investigate or interview potential witnesses Jesse Rollins and Brooke Salvi.  (Pet. 14).  He specifically alleges Rollins could have testified that Salvi was "drinking alcohol and happily hanging out with the defendant all evening."  (*Id.*).  It is unclear how the lack of this testimony would prejudice Williams as neither individual is mentioned at any point in the record.[7]  It is undisputed that Williams showed up at the Betty Boop diner at the time of the transaction, and his whereabouts before he arrived at the diner are not relevant.  Because Williams' claim of ineffective assistance of counsel based on failure to investigate is simply too vague and conclusory to state a proper ground for habeas relief

---

[7] Respondent suggests that Williams' argument as presented in his petition is misplaced, perhaps the result of a "cut-and-paste error" by his attorney, because their "review of the state-court record and petitioner's papers has failed to identify any other reference to these individuals."  (Resp't MOL 24).  The court agrees.

under either *Strickland* prong, it must be dismissed as meritless. *See Madarikan v. United States*, No. 95-CV-2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or interview witnesses where petitioner's allegations of ineffective assistance were "conclusory, and g[a]ve no indication as to what exculpatory evidence may have been revealed by an investigation"); *United States v. Vargas*, 871 F. Supp. 623, 624 (S.D.N.Y. 1994) (rejecting ineffective assistance claim based on failure to investigate where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored.").

## V.    <u>Excessive Sentence</u>

An excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Hernandez v. Superintendent*, No. 17 Civ 2457, 2018 WL 502784, at *5 (S.D.N.Y. Jan. 22, 2018) (citing inter alia *Vassar v. Artus*, No. 08-CV-0041, 2016 WL 3632712 at *7 (N.D.N.Y. June 29, 2016) ("It is well settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence imposed was within the range prescribed by state law."); *Quintana v. Lee*, No. 12 Civ. 3204, 2016 WL 2755918 at *5 (S.D.N.Y. May 11, 2016)).  A petitioner's claim that the sentencing judge abused his discretion in his or her sentencing decision is generally not a federal claim that is subject to review by habeas corpus. *Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (finding no cognizable federal claim when Fielding alleged that the state judge abused his sentencing discretion).  In order to raise a constitutional claim, a petitioner must show that the trial court's sentencing decision amounted to an improper "arbitrary or

capricious abuse of discretion" that deprived the petitioner of his liberty. *Herrera v. Artuz*, 171 F.Supp.2d 146, 151 (S.D.N.Y. 2001).

The Eighth Amendment forbids extreme sentences which are "grossly disproportionate" to the crime of conviction. *See Lockyer v. Andrade*, 538 U.S. at 72-73; *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citations omitted). The gross disproportionality principle is applicable only in "exceedingly rare" and "extreme" cases. *Id.* at 73, 77 (citing *Harmelin*, 501 U.S. at 1001).

In this case, Williams was convicted of two counts of Criminal Sale of a Controlled Substance in the Third Degree (Class B Felony), two counts of Criminal Possession of a Controlled Substance (Class B Felony), and Criminal Possession of a Controlled Substance in the Fourth Degree (Class C Felony). (Dkt. No. 13-4 at 19-21). Williams received an eight-year sentence for the Class C felony, where the maximum sentence was fifteen years. N.Y. Penal Law § 70.00(2)(c). He received a twelve-year sentence for the Class B felonies, where the maximum sentence was twenty-five years. N.Y. Penal Law § 70.00(2)(b). The sentences run concurrently for an aggregate sentence of twelve years, plus three years of post-release supervision. (Dkt. No. 13-4 at 21). These sentences are clearly within the maximum range prescribed by state law. N.Y. Penal Law § 70.00(2).

Williams argued that his sentence was harsh and excessive in his motion to vacate judgment. (SR 146-152). Judge Lynch did not explicitly analyze Williams' harsh and excessive claim but did find the argument was without merit. (SR 248). In his petition for habeas relief, Williams argues first that the trial court failed to consider the relevant factors prior to determining his sentence. (Pet. 21). Williams next argues

28

there is a presumption of vindictiveness because he was originally offered a plea of three years and was sentenced to twelve years. (Pet. 21-23).

"Under New York law, '[t]he mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof that defendant was punished for asserting his right to trial[.]'" *Van Gorder v. Allerd*, 387 F. Supp. 2d 251, 260 (W.D.N.Y. 2005) (quoting *People v. Chappelle*, 787 N.Y.S.2d 501, 502 (App. Div. 2005)). Further "[a]s the New York Court of Appeals has pointed out, 'given . . . the quid pro quo of the bargaining process . . ., it is also to be anticipated that sentences handed out after trial may be more severe than those proposed in connection with a plea.'" *Id.* (alteration omitted) (quoting *People v. Pena*, 406 N.E.2d 1347, 1353 (N.Y. 1980)). Therefore, the Appellate Division's conclusion was not contrary to Supreme Court law nor an unreasonable interpretation of the facts.

Here, there is no evidence that Williams was punished for proceeding to trial. This court finds Williams' sentencing claim is not cognizable on habeas review because the sentence was within the maximum sentence prescribed by state law. *Vassar v. Artus*, No. 08-CV-0041, 2016 WL 3632712 at *7 (N.D.N.Y. June 29, 2016). Accordingly, I recommend that this claim for habeas relief be denied.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: December 28, 2023

Andrew T. Baxter
U.S. Magistrate Judge